Mouser v. State Farm Mutual Automobile Insurance Company. It is Docket 25, 1333 Council. We are ready to hear your argument when you're ready to present it. Good morning, may it please the court. I'm John Taussig, representing the appellants with my co-counsel, Michael Rosenberg, and our clients are here as well. Julia Wunder and Stephanie Mousur were students at Colorado State University living in Fort Collins. They went on a spring break road trip and late at night, early the morning of April 14th, 2021, they were driving down I-25 in a very dark, desolate stretch of New Mexico, crested a hill and there was somebody, a pedestrian in the middle of their lane of travel. Stephanie was driving and she swerved to avoid this person, a man. She missed him, but in the process, lost control of the vehicle, a Toyota Land Cruiser that they dubbed the Tank. The Land Cruiser rolled six times. They suffered very serious injuries, but even worse, a vehicle behind our client struck the man that was in the road and killed him. So, a very tragic accident. This is a statutory interpretation case. We appealed the district court's granting of summary judgment to State Farm because the order was based on the Colorado Supreme Court's decision in State Farm versus Kastner and Kastner doesn't apply to this case. It doesn't apply to the vehicle that the court applied it to. What about that? Does that call for a remand or can we overlook that and decide? I think it's a de novo review. I think you can overlook that and decide. In Kastner, State Farm versus Kastner, that was a public policy case. The Supreme Court was trying to bracket the class of cases or claims where insureds are seeking uninsured or underinsured motorist benefits when there's a violent crime. Well, let's assume, for argument's sake, I know you're making a different argument about whether Kastner even applies here. Let's assume that it does. How did the district court err under the prongs of Kastner? We have the use prong and then causation sort of has these two components. Sure, sure. First of all, Kastner did deal with use. It was specifically a use case. You qualify for uninsured motorist benefits under the statute which was in effect on the date of this accident. If your injuries arose out of the ownership, maintenance, or use of an underinsured, or I'm sorry, an uninsured vehicle, and it's certainly part of the use of vehicles that they will break down, and you'll need a tow truck or repairs. In fact, the State Farm policy included an emergency roadside assistance endorsement just for that purpose. So even if the application to the uninsured vehicle was correct, and it wasn't, we should still have one because the only reason that these two men were there is that the vehicle conked out, and the court, as you know, found that it was due to the owner and operator's negligence. Let me, and Kastner was the same language. It was arising out of operation, maintenance, or use of an uninsured motor vehicle, and yet Kastner quotes favorably from another case that says basic automobile insurance policies are intended to cover driving the vehicle, not repairing it. So we would have to ignore Kastner in order to adopt your argument here. If we assume that Kastner applies to the uninsured vehicle. The Kastner holding is very specific. It's a holding that relates to sexual assaults that involve a vehicle, and Kastner was applied to the insured's vehicle. Well, Kastner doesn't limit its holding, and none of the cases after Kastner limit its holding to criminal situations, right? No, and I've read, I think I've read them all. And you don't cite any from Colorado or the 10th Circuit that limit Kastner's holding the way you'd like us to limit it? Well, I don't think anybody has ever raised the issue. In every case that I've read since Kastner, the parties, either the opinion explicitly says the parties agree Kastner applies, or it's just, it's not mentioned that anybody questioned it. Well, let's assume Kastner applies. I understand. And if Kastner is talking about to satisfy the use prong, the vehicle has to have, has to be used for its inherent purpose, right? And here, your argument is that that's transportation, even though the vehicle was broken down, not moving off the road. You still contend that under the inherent use prong, the inherent use understanding of Kastner, you satisfy that. Can you speak to that? Yes, under the inherent use idea, I think we still qualify, but the Uninsured Motorist Statute isn't limited to use. Kastner didn't decide whether what is arising out of the maintenance of a motor vehicle is, or arising out of the ownership of a motor vehicle is. It dealt only with use, and the parties, everybody seemed to agree that was the only issue. And the big issue is that Kastner applies to the insured's vehicle. That it doesn't apply to the uninsured vehicle. The statute is what applies to the uninsured vehicle. Kastner has nothing to do with the uninsured vehicle. Well, if you look at Kastner, and I'm reading from Kastner, it says that if the claim is made pursuant to the policy's uninsured motorist provision, the focus is on the use of the uninsured vehicle. That's a direct quote from Kastner. Well, that may be a quote in Kastner, but what the court did was talk about the Ms. Kastner's vehicle. That was the whole point of the opinion. Well, Kastner is complicated because there's also a PIP claim. And the court in Kastner indicates that when you're dealing with that claim, you do look at the insured vehicle. So Kastner makes it pretty clear what we look at, depending on what provision of the insurance contract we're operating under. And in that case, it was both. Right, right. And that's not true here. It can easily be, I don't know, I sometimes say something is complicated versus complex. This is a complex issue because both, whether it's the insured vehicle or the uninsured vehicle, a lot of the same terms are used, and cases will cross over from one to the other. But Kastner's holding is very specific. Definitely, it applies to the insured's vehicle. That was the only vehicle that was even involved. And it's a case that's designed to sort of let us all know what the limits are in the situation where there's a crime. The Supreme Court never intended Kastner to change the uninsured motorist statute or to limit negligently caused accidents that everybody agrees are covered. But even if we throw all that aside, maintenance and ownership are covered by the uninsured motorist statute. And the negligence of the uninsured vehicle's owner-operator caused it to break down, and they were stranded for three hours. He bought the vehicle a week before, right? Right. And so you're saying that negligent maintenance based on what? First of all, he was advised in writing to have the vehicle inspected by a mechanic before he bought it. Is this coming from Mr. Froelich's interview? It is. I don't know how that's part of the evidence here. It was not offered until the reply brief, and there's never been any assessment of the hearsay objection that was made to that. So I don't think that's properly before us on appeal. I understand that, Judge, and I was just simply trying to answer the question. Well, you can only answer the question with evidence in the record before us.  The stipulations that the parties agreed to and filed with the court said that the court could rely on what was said in the stipulations, and the court found that Mr. Froelich's negligence caused the vehicle to break down for purposes of this coverage decision. Well, assuming that you accept Judge Rossman's that it applies, the case applies, and let's say we even agree with you on use, don't you have an insurmountable problem when we look at whether it was causally related when you look at the case law? No. I mean, what if the breakdown had happened three days before this accident? Would it still be causally related in your view? It depends on a lot of things. It depends on the circumstances, but what we had here was the state farm policy obviously contemplates that people are going to need emergency roadside assistance, which is exactly what happened to the uninsured vehicle. He needed emergency roadside assistance, and it was late at night, it was 1230, they'd been trying for three hours to get emergency roadside assistance. Three days later, I mean, a lot of things could have happened in three days, and I'm not prepared to address, I understand that there could be different hypotheticals that might change things. But that's precisely the problem, is that it is the hypotheticals that you have to, and we have to find a way to apply the rule in Kastner's causation prong, which says that you have to show not only but for, but this unbroken causal chain between the use and the injury. And why shouldn't we agree with the appellee's understanding here that deciding to get out of the car, walk into traffic, broke whatever causal chain, whatever but-for causation existed, it was broken by that independent decision? Because he was trying to get emergency roadside assistance, but Kastner does not apply, I mean, just, unless there are more questions, I wanna say a couple quick things, and then we'll sort of. Well, could you finish answering my question? Yes. Because your point, I think, is, if I understand your answer, is that because he was in the road to get help, and he wasn't in the road to take a walk, he wasn't in the road because he happened to decide to go to the bar down the street or something, because it's all tied back to the, is that your position? Right, right. And what is sort of your best case, either, I mean, pre-Kastner or post-Kastner, because Kastner seems to at least acknowledge the pre-Kastner causation cases, that helps us make sense of this link? There's a bunch of them, I think, starting on page 12 of our brief, but Cole is one, KOHL, the case where people are changing a flat tire, taking a tire out of the trunk, there's some out-of-state cases we cited that are almost the same facts. But I think it's important that Kastner did not apply to the insured vehicle. I'm sorry, Kastner only applies to the insured vehicle. The only thing that determines whether the uninsured vehicle should provide benefits is if the injuries arose out of the operation, maintenance, or use. It doesn't require the Kastner analysis, it goes back to all the long line of cases Kastner cited, some with approval, and Kastner didn't overrule any cases. I'd like to reserve my last minute and a half, if I may. Very well. Good morning, may it please the court. My name is Evan Stevenson, and I represent State Farm in this appeal. The court should affirm the judgment of the district court for three reasons. First, the court correctly found that the Kastner use prong was not satisfied in this case. Second, in footnote six, the court alternatively stated that the causation prong of Kastner would not be met, and that is a correct conclusion. And third, adopting the plaintiff's position would burst all limits on UM coverage, making virtually anything that happens near roads or around roads all automatically come within UM coverage. What car did the district court focus on? The district court. The uninsured or the insured? Yeah, it was, I believe it was focusing on the uninsured vehicle, and I think one of two things happened. Because if you look at- Because that's not what it says, right? Yeah, yes, Judge Varhoek says Land Cruiser. When you look at footnote six, though, I think it's clear in footnote six that Judge Varhoek is, he refers to the car that's broken down there in footnote six. I think it's possible that he meant to refer to the Subaru and just referred to the Land Cruiser. That's how I read it, because it's very clear on his radar screen in footnote six that he is contemplating a car that has broken down, and that would be the Subaru. And I'll confess to your honors, I made that switch up a few times myself working on this case. I think it's understandable. And the analysis certainly matches the Subaru being the focus, even though it does, you're correct, Judge, it does say Land Cruiser, I think at least twice in the opinion. Under the governing law, what car should the focus be on? The Subaru. And it has to be under the policy language. So this is coverage for injuries caused by a driver of an uninsured vehicle. So that is the vehicle that matters. In fact, Ms. To the same extent under law, they would be liable to you, right? So. Correct. So it suggests under the policy you're focused on whether the driver of that uninsured vehicle would have legal liability to the injured insured. Am I understanding it? That is completely correct. The way I try to remember it is I just imagine that the uninsured motorist coverage is it's like it's as though the at-fault driver had liability coverage. That's how I keep it straight in my mind all the time. If only. Right.  Correct, Judge. And so really the only person that they can focus on is Mr. Fralick. So it's coverage that attaches to the liability of the driver. So it's not even the vehicle itself, what State Farm's policy says and what the statute says is it's coverage for the liability of the driver or owner of the uninsured vehicle. So this whole case is about Mr. Fralick. That's what it's about. It's not even really about Mr. Westick except they're trying to tie Mr. Westick to Mr. Fralick and Mr. Fralick's conduct really up to a week before the accident. And if once you, once you focus down on who this case is really about, Mr. Fralick, I don't think there's any question that the first Castner prong is not satisfied. So Mr. So to satisfy the first Castner prong, we have to determine that the Subaru was being used for its inherent purpose at the time of the accident. And is that correct? Correct. And why is that not transportation in this case such that the use prong resolves not in your favor? Yeah, so right. So the reason is because it had broken down sitting in the median for three hours, 300 feet away from the other side of the road. It was inoperable. Well, there's lots of cases that talk about parked cars as not being used for their inherent purpose, but this car was being used. It was, they were driving it and it broke down. And it seems to me, and tell me if I have my understanding of the law isn't right, but it seems to me that there are cases that say maintenance activities that are related to the inherent transportation use, plainly mean use under Colorado law. I think most of the cases you may be thinking of cases are where someone was kind of parked on the side of the road near their own vehicle and another vehicle came up and hit them or something like that. In that case, it's the vehicle that's hitting them. That's the one that matters. So the Subaru in this situation would be like, they're basically trying to put the Subaru in the same position as the vehicle that comes along and hits people. And that doesn't make sense here. A vehicle that is totally broken down and inoperable, can't even function, can't even start for hours. It is not being used to hurt someone else. So you're saying that those cases that I'm referencing are focusing on the car that, the wrong car basically, that those cases are not focusing on the car we need to be focusing on? Yeah, it could be. I'd have to go through and look at each case that you're thinking of. Some of those are PIP cases. Some of those are cases involving other kinds of coverage or other facts. Usually when you have a case where someone's broken down on the side of the road and fixing it, in an uninsured motorist case, usually somebody comes along and hits them. And then it's the car that hits them that is the uninsured vehicle. But even if there were, I'll just accept the kind of premise of the question. I would just disagree that an inoperable vehicle for three hours is still being used to cause injury across the side of the road, 300 feet away. And I mean, in order to make that work, they would also have to tie Mr. Westick's decision to get out of the vehicle to somehow be in use connected to Mr. Fralick. And we know from the stipulated facts that can't happen here because Mr. Fralick actually told Mr. Westick not to leave. So it's really hard to see how Mr. Fralick's alleged negligence in maintaining his vehicle and changing his own battery or not getting a mechanic to look at it, how those uses, by the way, they say that's the use, not maintaining it, not keeping it in good working order. They're saying that that's the use by Fralick that leads to all this. From the time that it broke down, it continues throughout. They never lose the focus or attempt to get the car working again. That was not a stipulated fact. I think there are, there is some- Well, but among the stipulated facts, I thought, were that the driver is trying to stop people and three hours go by, apparently nobody will stop. And that sounds like three hours worth of trying to get the car going again. Yeah, I would say that Mr. Fralick was trying to flag down help. I don't think that's the same as trying to get the car to start again. He actually left the vehicle and was trying to flag people down. I don't know of any cases that say that's using the vehicle. And I would disagree that that's using it as a mode of transportation. Can you give me an example of when you would have negligent maintenance that there would be coverage? Oh, yeah. So if someone doesn't get their brakes checked and the brakes fail, and then they run into somebody, but so if Mr. Fralick- Does that give anything other than using the vehicle gives? I mean, is maintenance just a throwaway block? I think you're accurately identifying that both operation and maintenance are considered narrower in the law and use has, for all intents and purposes, become the focus of all these cases because it's the one that's the broadest. That's a good question. I don't think any case has actually decided that, has ever drawn the Venn diagram to see exactly what is maintenance but is not use. But I could say the maintenance type cases are cases where there's some kind of failure of the car and then the car runs into something and hurts somebody. Well, just the policy language, caused by an accident that involves, that's a broad word, that involves the operation, maintenance, or use of an uninsured motor vehicle as a motor vehicle. I can envision that indeed involves as met here, the accident was caused by maintenance. Had there not been poor maintenance, the accident would not have happened, sort of. Yeah, I think the problem with that mode of reasoning is it reverts to pure but-for causation, which is rejected in Kastner, completely rejected in Kastner. Well, that's part of the problem here. These two prongs, the way they're being argued and the way they're being interpreted, aren't cleanly separate. And so my question to you is, why shouldn't we do exactly what happened in Fisher, where we said prong one is confusing because it seems to involve also pieces of causation in order to determine whether it's use. And why, is there any reason we couldn't just say, we'll skip over that and say, even if we were to spot you use, there's no, you have intervening causes here that take you out of the requirement under Kastner for what it means to have causation. Judge, I accept your terms. Well, I don't. I mean, respectfully. I mean, I'm not sure about Fisher. I'd like to hear more about why we can use Fisher. I mean, Fisher, you liken Mr. Westick to the murderer in Fisher. And that seems to me to be a substantial distinction here where we have non-criminal, we have negligence. We don't even have an intentional act. So persuade me that Fisher is the way. Yeah, so what I would say is that under the second prong of Kastner, that here there is a significant independent act quite separate from the vehicle breaking down. And it involves someone who's not even the driver, right? That's another thing that makes it independent. Remember, all of the liability here has to flow from Mr. Freilich alone. He alone is the owner and driver. The policy language says it's Mr. Freilich's liability is the source of recovery for the plaintiff, if any. And so the independent and significant act is that Mr. Freilich told Mr. Westick not to leave the vehicle, and he did. He then walks 300 feet to the other side of the road. And with no lights anywhere, he either is just standing there or sits down in the dark where it's inevitable that some vehicle is going to come along and something like this is going to happen. And it's independent first because Mr. Freilich told him not to do it. That's- Independent of what? I mean, is it what we're looking for to see whether assuming the use prong is satisfied, assuming but-for causation is satisfied, you have to do the next step. Was there a break in the causal chain? And it seems to me that a causal chain is broken if the reason Mr. Westick is in the road somehow has nothing to do with the fact that the Subaru broke down. No, no, I would say that independent means despite that. Despite that that chain of causation was in motion, did something else happen that put him there? And yeah, it's he disobeyed Freilich's instruction. And also, what is independent of? It has to be independent of Freilich's negligence. And so Freilich's alleged negligence is changing the battery himself, not getting the car checked out. And the independent decision from all that is Westick walking all the way to the other side of the freeway. That's an independent decision. It had nothing to do with Freilich. Freilich didn't tell him to do it. It had nothing to do with the battery supposedly not being changed. All those things are independent of him deciding to get out of the car and walk to the other side of the road. I mean, not even that. Let's just say he had done that. Even if, to borrow Judge McHugh's phrase, even if I spot you that, he then sits down in the dark. I mean, that has gotta be an independent cause. Maybe fell. Okay, maybe he fell. Maybe he fell down, maybe he stumbled, or he stood in the dark. But he's in the middle of an interstate highway in the dark, just apparently right in the path of the oncoming lane. Do you have any cases that distinguish between drivers and passengers in the way that you did here? In other words, that really what we're looking at is the connection to Freilich, and he's the driver, it's his negligence. Yeah, so I don't think I've seen a case where anyone's tried this before. So I don't think the cases that are cited in the briefs address that specifically. But I can tell you all of those cases involve the driver of the uninsured vehicle being the person at fault. I mean, that's plain language. It's right there. They are entitled. No, I agree with that. I'm talking about for purposes of the causation. Oh, okay. No, I don't think it's been addressed previously. So I think they're trying something new here, which kind of leads me back to my last point, which is I think if the court goes with this, there'll be a lot more of these UM-type claims. It's really hard to imagine any limiting principle. This is my biggest. Well, let me ask you this. Would it make any difference if it was Mr. Freilich who walked to the other side of the interstate in the dark and then fell or sat down in the middle of the road in terms of breaking the causation chain here? I think it would very marginally help their argument, but not a whole lot. I think the decision to walk out and just put yourself in the middle of oncoming traffic is inherently an independent and significant act no matter who does it. But I think it just makes it even clearer that it wasn't even the driver of the vehicle. I see I have 28 seconds left. So the last point I'd like to make is just, if the court goes with this, it's just hard to see any limiting principle to these. Use will encompass really anything at that point. And causation, it could travel for weeks after events, hours, long distances, even when vehicles are inoperable. And so we respectfully request that the court affirm the judgment of the district court. Thank you. I'm repeating myself, but Kastner doesn't apply to this case. Kastner, there's nothing in the Kastner holding that would suggest it applies to negligently caused accidents. The holding itself says when there's a sexual assault that it involves a vehicle. It didn't apply to this car. It applies to the insurance car and the court applied it to the uninsured vehicle. It also didn't apply to the circumstances in the UM statute, maintenance, ownership, that liability can arise from. To expand Kastner to cover negligently caused accidents could not be reconciled with all of the various public policies, the public policy and legislative purpose of the UM statute, all the different insurance cases that talk about interpreting insurance policies in favor of coverage, et cetera. Any expansion like that should come either from the General Assembly or the Colorado Supreme Court. You asked about parked, one of the questions was about parked cars. I just did a quick skim. In the cases cited by Kastner where the vehicles weren't moving, included Cole, Titan, McMichael, there are three cases that relied on Kastner after, well, obviously after, that where the vehicles were not moving. Des, my time's up. Can I just say the three cases real quick? Yes, you may. All right, Des John, where the guy was working on a truck, he was a mechanic. The truck was inoperable because he was trying to fix it in a garage, in a shop. Mays, Kevin Mays was my client actually. He had parked his semi at a 7-Eleven or a gas station, gone in to use the phone and then he was injured in the parking lot. You know, his truck, he was even in the truck. And then Katrone, the Farmer's Alliance versus Katrone case, I think that was the one that involved a Colorado State Patrolman. Thank you, counsel, for your arguments. The case is submitted. Counselor excused.